UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

| | |
|---|---|
| TIMOTHY LETOURNEAU, | ) |
| | ) CIVIL ACTION NO. 6:13-CV-00055-KKC |
| PLAINTIFF | ) |
| | ) |
| v. | ) |
| | ) **MEMORANDUM OPINION** |
| | ) **AND ORDER** |
| | ) |
| LIFE INSURANCE COMPANY OF | ) |
| NORTH AMERICA d/b/a | ) |
| CIGNA GROUP INSURANCE, | ) |
| | ) |
| DEFENDANT | ) |

\* \* \* \* \* \* \* \* \*

This matter is before the Court on Plaintiff Timothy Letourneau's motion to remand this matter to state court. (DE 13). Letourneau asserts several state law claims against Defendant, Life Insurance Company of North America d/b/a Cigna Group Insurance ("LINA").[1] LINA removed this matter to federal court alleging that Letourneau's claims are regulated by the Employee Retirement Income Security Act of 1974 ("ERISA"). Because both the short term disability plan ("STD") and long term disability plan ("LTD") at issue in this matter are governed by ERISA, Letourneau's motion to remand to state court is denied. (DE 13).

## I. BACKGROUND

Letourneau was employed at Kmart, through Kmart Corporation/Sears Holding Management Corporation,[2] where he was automatically enrolled in STD coverage and elected to enroll in LTD coverage. (DE 1-3, 13-5, 13-8). Sometime in 2011, Letourneau applied to receive STD and LTD benefits through Kmart's insurance provider, LINA. LINA denied Letourneau's

---

[1] Both parties refer interchangeably to Defendant as LINA and CIGNA.
[2] Kmart Corporation is wholly owned by Kmart Holding Corporation, which is a wholly owned subsidiary of Sears Holding Corporation.

claim. (DE 1-3). Letourneau appealed the denial of benefits, and LINA informed Letourneau of his rights to bring legal action under ERISA following the "adverse benefit determination on appeal." (DE 1-3). Letourneau filed suit against LINA in Wayne County, Kentucky Circuit Court. (DE 1-3). LINA removed this matter to this Court, and Letourneau subsequently filed a motion to remand to state court. (DE 1-1, DE 13-1).

## II. ANALYSIS

A district court must conduct a three-step analysis in determining whether a program is governed by ERISA. *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 434 (6th Cir. 1996). First the court must ascertain whether the program is excluded from ERISA under the "safe harbor" provision. *Id.* at 434–35. Second, the court must determine whether a particular program constitutes a "plan" within the meaning of the Act by inquiring whether, "from the surrounding circumstances, a reasonable person [could] ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits." *Id.* at 435 (internal quotations omitted). Third, the court must determine "whether the employer 'established or maintained' the plan with the intent of providing benefits to its employees." *Id.* (internal citations omitted). The Court has examined both the LTD and STD plans according to this three-step process.

**A. The STD Plan is governed by ERISA.**

    **1. Step One: Safe Harbor Provision**

An insurance policy is excluded from ERISA under its safe harbor provision if the plan meets all four of the following criteria:

> (1) the employer makes no contribution to the policy; (2) employee participation in the policy is completely voluntary; (3) the employer's sole functions are, without endorsing the policy, to permit the insurer to publicize the policy to employees, collect

> premiums through payroll deductions and remit them to the insurer; *and* (4) the employer receives no consideration in connection with the policy other than reasonable compensation for administrative services actually rendered in connection with payroll deduction.

*Id.* (citing 29 C.F.R. § 2510.3-1(j)) (emphasis added).

Kmart's STD program does not fall within ERISA's safe harbor provision because it was fully funded by the employer and employee participation was not voluntary. (DE 13-5, 13-8). As the Kmart benefits pamphlet indicates, "STD coverage continues to be paid for entirely by the company [Kmart]. You [the employee] do not pay anything for STD coverage." (DE 13-5). Because Kmart clearly contributes to the policy, it is therefore not exempt from ERISA under the safe harbor provision. *Helfman v. GE Group Life Assur. Co.*, 573 F.3d 383, 391 (6th Cir. 2009) (holding that "if an employer contributes to any employee's payment of premiums, ERISA must apply to the entirety of the particular insurance program").

Letourneau does not contest that he was automatically enrolled in the STD plan or that Kmart contributed to it. (DE 14; 13-1). Instead, he points to a provision of the employee handbook, which states that the Sears employee STD plan is a "payroll practice exempt from ERISA." (DE 15). That particular portion of the handbook, however, does not apply to Letoureau or other Kmart employees. The handbook clearly states, "Field and Distribution Center associates of *Kmart Corporation* are *not* eligible for the Sears Holding STD Program, and should instead refer to the next section of the Handbook entitled Kmart Disability Income Plan (Kmart Associates) for short-term disability benefit information." (DE 6-1) (emphasis added). The employee handbook calls the Kmart STD plan a "welfare benefit plan under the Employee Retirement Income Security Act. . . ." (DE 13-5). Because the STD program was employer funded and involuntary, it does not fall within the safe harbor provision.

**2. Step Two: Existence of an ERISA "Plan"**

"[A]n ERISA plan exists if a reasonable person can ascertain (1) the intended benefits, (2) the class of beneficiaries, (3) the source of financing, and (4) the procedures for receiving benefits." *Williams v. WCI Steel Co., Inc.*, 170 F.3d 598, 602 (6th Cir. 1999). The employee handbook clearly specifies the intended benefits, group of beneficiaries, source of financing, and procedures for receiving benefits. (DE 13- 8). A chart in the handbook showcases the employee benefits. (DE 13-8). There is an eligibility section that explains which Kmart employees are automatically covered. (DE 13-8). The STD plan description clearly states that employees pay nothing for the STD plan, and also provides the process for applying for benefits. (DE 13-8). Thus, the STD plan satisfies step two in the three-step factual inquiry.

**3. Step Three: Plan Created to Provide Benefits**

Finally, the STD plan easily satisfies the third step in the three-step ERISA inquiry because Kmart/Sears established and maintained the STD plan to provide benefits to Kmart employees. In his affidavit, Stanley Aldis, Senior Manager of Benefits Operation for Sears, explicitly states, "The Sears Holding Corporation Employee Welfare Benefit Plan was established for the purpose of providing certain employee benefit programs to eligible employees . . . ." (DE 14-1). The employee handbook notes that the STD plan "is designed to help eligible Kmart hourly associates cope with an off-the-job Sickness or Injury . . . ." (DE 13-8). Further, Kmart funded the STD plan, clearly indicating that Kmart/Sears created the plan for the employees' benefit.

Therefore, the STD plan does not fall within the ERISA safe harbor provision under step one and easily satisfies the last two steps of the three-step ERISA inquiry. The STD plan is governed by ERISA.

**B. The LTD plan is governed by ERISA.**

The LTD plan also is governed by ERISA, because it too is not excluded from ERISA under the safe harbor provision and easily meets steps two and three in the ERISA inquiry.

**1. Step One: Safe Harbor Provision**

"A policy will be exempted under ERISA only if all four of the 'safe harbor' criteria are satisfied." *Thompson*, 95 F.3d at 435. The absence of any one of the four safe harbor criteria, such as the endorsement criteria in the instant case, is enough to exclude the policy from ERISA's safe harbor provision. *Id.* Here, it is clear that Kmart/Sears Holding endorsed the policy.

In considering whether an employer has endorsed a policy within the meaning of the safe harbor provision, the Sixth Circuit has considered several questions including:

> (1) Has the employer played an active role in either determining which employees will be eligible for coverage or in negotiating the terms of the policy or the benefits thereunder?
> (2) Is the employer named as the plan administrator?
> (3) Has the employer provided a plan description that specifically refers to ERISA or that the plan is governed by ERISA?
> (4) Has the employer provided any materials to its employees suggesting that it has endorsed the plan?
> (5) Does the employer participate in processing claims?

*Bailey v. Minnesota Life Ins. Co.*, 2009 WL 803701 at *3 (E.D. Ky. March 24, 2009) (referring to *Thompson* 95 F.3d at 437) (internal citations omitted). "A finding of endorsement may be appropriate upon an affirmative response to *one or more* of these factors." *Id.* (emphasis added); *Booth v. Life Ins. Co. of N. Am.*, 2006 WL 3306846 at *3 (W.D. Ky. Nov. 9, 2006). The first factor is not squarely addressed in the record. However, three of the four remaining factors weigh in favor of endorsement. Throughout each factor, the emphasis is placed "on those circumstances which would allow an employee to reasonably conclude that the employer had

5

compromised its neutrality in offering the plan." *Thompson*, 95 F.3d at 437. "If, upon examining all the relevant circumstances, there is some factual showing on the record of substantial employer involvement in the creation or administration of the plan," then the employer has endorsed the plan. *Id.* at 436. In this matter, Kmart endorsed the LTD plan, and thus, the safe harbor provision does not apply.

Sears Holding Company is named as the plan administrator in the group disability insurance certificate, in the 2012 employee handbook, and in the Sears Holding Corporation Employee Benefit Plan, which specifically references the LTD plan by policy number. (DE 13-8, DE 13-11, Exhibit C, DE 13-10). The LTD plan itself is silent as to a plan administrator. (DE 13-3). The plan, however, recognizes Sears as the "policyholder." (DE 13-3). Thus, from an employee perspective, there is at least some reference to Sears. Unlike other cases in which this Court has found that an employer was named plan administrator in one document but the insurance company was named as administrator in the insurance document, the LTD policy in this case is simply silent to the matter. *See Bailey*, 2009 WL 803701 at *5. In the absence of the insurance policy contradicting other documentation, the naming of Sears as plan administrator in at least three other documents favors endorsement.

Further, ERISA is mentioned in the Kmart/Sears LTD plan description. Both the 2010 and 2012 benefits handbooks for full-time hourly associates provide an entire section on the LTD plan, which lays out the specifics of the policy. (DE 13-5, 13-8). Under the heading "Important Notes," the handbook states, "The LTD Plan is a welfare benefit plan under the Employee Retirement Income Security Act of 1974 . . . This section of the Handbook . . . [is] intended to constitute a summary plan description in accordance with ERISA." (DE 13-5, 13-8). The employee welfare benefit plan also specifically indicates that the LTD plan is governed under

ERISA and specifically provides the group policy number listed on Letourneau's LTD policy. (DE 13-11).

Moreover, these references to ERISA in connection to the LTD plan were not just, "buried in the back of a booklet," as Letourneau contends, but are notably marked in two separate locations specifically referencing the LTD plan and even the policy number of the plan. (DE 13-5, 13-8, 13-11). Letourneau insists that this case is similar to a case where the Court held that an employer had not endorsed the plan because, among other issues, any mention of ERISA was buried in the back of a booklet. (DE 13-1). However, in that case, the summary plan did not mention ERISA, and indicated instead that the insurance plan was governed by the insurance document, which also made no mention of ERISA. *See Bailey*, 2009 WL 803701 at *5. In the instant case, the summary plan clearly states that ERISA applies specifically to the LTD plan. (DE 13-5, 13-8). "[W]here the employer provides a summary plan description that specifically refers to ERISA in laying out the employee's rights under the policy or that explicitly states that the plan is governed by ERISA, the employee is entitled to presume that the employer's actions indicate involvement sufficient to bring the plan within the ERISA framework." *Thompson*, 95 F.3d at 437.

Finally, the LINA denial of coverage letters indicate specifically that ERISA governs. (DE 13-13). One letter states, "Based on the information provided by your Employer, your claim is governed by the Employee Retirement Income Act of 1974 . . . ." (DE 13-13). Further, "[y]ou [employee] have a right to bring a legal action for benefits under . . . ERISA." While this mention of ERISA is not within the plan description, it does provide yet another indication that this claim is governed under ERISA, not state law.

In addition, LINA provided materials suggesting Kmart/Sears endorsed the plan. The fall

7

2010 benefits news pamphlet is clearly marked with a Kmart and Sears logo. (DE 13-4). Letourneau alleges that "Cigna [LINA] presumably produced this document," but provides no support for why a document bearing only a Kmart and Sears logo, given to Kmart and Sears employees, would be produced by LINA, or why if the document was produced solely by LINA, Kmart and Sears logos would be present. (DE 4). Instead, this Court finds it more likely that the pamphlet was provided to Kmart and Sears employees by Kmart and Sears, and it would matter little if LINA did assist in creating the document. The benefits news pamphlet states, "CIGNA [LINA] will be *our* provider for the Sears Holdings short-term and long-term disability plans." (DE 13-4) (emphasis added). As other courts have recognized, "[i]n the difference between 'our plan' and 'a plan' lies the quintessential meaning of endorsement." *Tinsley v. Connecticut Gen. Life Ins. Co.*, 744 F. Supp.2d 637, 641 (W.D. Ky. 2010) (internal citations omitted). The benefits news pamphlet also calls the LTD plan "your *Sears Holding* disability coverage," and cautions against what could happen if an employee needed to leave work for an extended period of time due to sickness or injury. (DE 13-4) (emphasis added). By referring to CIGNA (LINA) as "our provider," and by calling the LTD plan "Sears Holding" coverage, Kmart/Sears took ownership of the plan, and "if a plan or program is the employer's plan or program, the safe harbor does not beckon." *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1137 (1st Cir. 1995).

Moreover, the 2012 employee benefit handbook makes similar cautions about being disabled without coverage and again refers to the LTD plan as the "Sears Holding Long-Term Disability Insurance Plan." (DE 13-8). This again shows some ownership of the plan, and also indicates endorsement.

Letourneau argues that he may not have received the benefits news pamphlet or handbook. However, the question is not whether Letourneau received and read the employee

documents but whether a reasonable employee would believe that the employer had compromised its neutrality towards the plan.  *Thompson*, 95 F.3d at 437.  A reasonable employee would likely read the benefit news pamphlet or the employee handbook and could "reasonably conclude that the employer had compromised its neutrality." *Id.*  References to "our provider" and the "Sears Holding Long-Term Disability Plan," as well as the employer's caution against the negative effects of not having disability insurance, would cause a reasonable employee to believe that Kmart/Sears had endorsed the LTD plan.

Under the final endorsement factor, Kmart/Sears did not participate in processing claims. While Kmart/Sears appears to have provided employees with the logistics of the claims process in the employee handbook, LINA was actually responsible for the claims process.  (DE 13-8). While this factor weighs against endorsement, it is not conclusive when compared to the substantial evidence of endorsement under the other three relevant factors in this matter.

Considering all relevant endorsement factors together, Kmart/Sears was substantially involved in the LTD plan, and viewing the actions of Kmart/Sears from an employee perspective, it is clear that Kmart/Sears endorsed the plan.  The employer-provided summary of the LTD plan states explicitly that ERISA governs, and this alone is enough for the employee to "presume that the employer's actions indicate involvement sufficient to bring the plan within the ERISA framework."  *Thompson*, 95 F.3d at 437.  Considering the additional instances of endorsement, the safe harbor provision cannot exempt the LTD plan from ERISA.

**2. Step Two: Existence of an ERISA "Plan"**

Under step two in the three-step ERISA inquiry, the LTD plan is an "ERISA plan." Again, "an ERISA plan exists if a reasonable person can ascertain (1) the intended benefits, (2) the class of beneficiaries, (3) the source of financing, and (4) the procedures for receiving

9

benefits." *Williams*, 170 F.3d at 602. The employee handbook clearly indicates the "amount of benefits" and the class of beneficiaries. (DE 13-8). The handbook also provides a chart describing the plan's cost to employees and the procedures for applying for benefits. (DE 13-8). Thus, a reasonable employee could ascertain that the LTD plan was a "plan" for purposes of ERISA.

### 3. Step Three: Plan Created to Provide Benefits

Finally, under step three, Kmart/Sears established or maintained the LTD plan to provide benefits to Sears/Kmart employees. As Stanley Aldis, the Senior Manager of Benefits Operations for Sears, explicitly noted in his affidavit, "The Sears Holding Corporation Employee Welfare Benefit Plan was established for the purpose of providing certain employee benefit programs to eligible employees . . . ." (DE 14-1). Moreover, the benefits news pamphlet indicates, "Your [employee's] Sears Holding disability coverage helps *you* [employee] to continue to pay your bills so you can focus on getting well." (DE 13-4). The logical conclusion from these facts is that Sears established the LTD plan as part of its overall Employee Welfare Benefit Plan and intended that the LTD plan benefit its employees.

### III. Conclusion

For the above stated reasons, the Court HEREBY ORDERS that Plaintiff's motion to remand this matter to state court is DENIED. (DE 13).

This 5th day of November, 2013.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY